# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DIRECT BIOLOGICS, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:18CV2039 HEA ) |
| KIMERA LABS, INC., | ) ) |
| Defendant. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's Motion for a Preliminary Injunction [Doc. No. 18]. Plaintiff claims defendant breached its duties under the parties' "Exclusive Distribution and Supply" Agreement. Plaintiff seeks to enjoin 21, 2019Defendant from employing its former employee, Adam Koster and from soliciting Plaintiff's customers' business. Defendant opposes the Motion, and on August 21, 2019, a hearing was held. For the reasons set forth below, the Motion is denied.

### Facts and Background

Plaintiff's unverified Petition[1] alleges the following:

Direct Biologics and Kimera Labs entered into an Exclusive Distribution

---
[1] This action was originally filed in the Circuit Court of St. Louis County. Defendant removed the action based on the Court's diversity of citizenship jurisdiction. 28 U.S.C. § 1332.

and Supply Arrangement (the "Agreement") April 16, 2018.

Under the Agreement, Kimera Labs appointed Direct Biologics as Kimera's exclusive distributor, "for all of Kimera's amniotic products, which ... consist of 'Amnio2,' a pure amniotic product, and 'Amnio2x,' which is an amniotic product combined with exosomes."

Upon placing orders by Direct Biologics, Kimera Labs was required to, and on multiple occasions did, ship product into the State of Missouri to be distributed by Direct Biologics, as required by the Agreement.

Direct Biologics has fully performed all of its obligations under the Agreement.

Kimera Labs has committed numerous material breaches of the Agreement since the Agreement was signed, including:

Kimera Labs has employed Adam Koster, a former employee of Direct Biologics, as Kimera Labs' national sales manager in violation of section 20 of the Agreement which states:

> During the term of this Agreement and for a period of two (2) years after any expiration or termination of this Agreement, neither party will employ or solicit for hire as an employee, consultant or otherwise any of the other party's personnel without the other party's express written consent.

Kimera Labs has used Adam Koster's knowledge of Direct Biologics' customers gained through his employment with Direct Biologics to sell amniotic

products on Kimera Labs' behalf directly to Direct Biologics' customers in violation of section 21 of the Agreement which states:

> Each party [] agrees that during the Term and for three (3) months thereafter, it shall not, directly or indirectly, take, attempt to take, or otherwise interfere with any business with a customer, distributor or sub distributor of the other party.

Kimera Labs has provided products with a shelf-life of less than 10 months and refused to replace those products with products having a shelf-life of at least 10 months, as required by section 4.k. of the Agreement which states:

> Kimera will ship [Direct Biologics] only Amniotic Products that have at least ten (I0) months shelf life as of the date of shipment. Should Kimera ship product having a shorter shelf life as of the date of shipment, [Direct Biologics] may at its option swap out the short-lived product for similar product having at least a 10-month shelf life.

Kimera Labs has not taken steps to obtain accreditation with the American Association of Tissue Banks as required by section 4.d. which states:

> Kimera will prioritize the accreditation process with the American Association of Tissue Banks ... as soon as possible following the execution of this Agreement.

Kimera Labs has distributed amniotic products directly to customers.

Direct Biologics does not have an adequate legal remedy because under the Agreement, "In no event will either party ... be liable to the other party for direct, consequential, special, indirect, incidental, punitive or exemplary damages."

## Discussion

Plaintiff originally sought three forms of injunctive relief: (1) an order enjoining Defendant from directly or indirectly selling its amniotic products to any person or company other than Plaintiff; (2) an order enjoining Defendant from employing Adam Koster; and; (3) an order enjoining Defendant from directly or indirectly soliciting Plaintiff's customers. Since the filing of the Motion for Preliminary Injunction, Plaintiff has withdrawn its motion as to Defendant's sale of its products to any person or company other than Plaintiff. As such, the Court will only address the motion as to the remaining requests.

Although Plaintiff claims it has lost money as a result of Defendant's actions, Plaintiff argues that it is entitled to injunctive relief because of the Limitation of Liability provision in the Agreement, which provides:

> Limitation of Liability. IN NO EVENT WILL EITHER PARTY OR ITS EMPLOYEES, OFFICERS AND DIRECTORS BE LIABLE TO THE OTHER PARTY FOR DIRECT, CONSEQUENTIAL, SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR EXEMPLARY DAMAGES, COSTS, EXPENSES, OR LOSSES (INCLUDING LOST PROFITS, LOST DATA, OR OOPPORTUINTY COSTS), REGARDLESS OF THE FORM OF ACTION, DAMAGE, CLAIM, LIABILITY, COST, EXPENSE, OR LOSS, WHETHER IN CONTRACT, STATUTE, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE.

Plaintiff argues that absent injunctive relief, it will be remediless against Defendant's breaches of the Agreement.

When deciding whether to issue a preliminary injunction, the Court weighs the four *Dataphase* factors: (1) the threat of irreparable harm to the movant; (2) the

state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Importantly, because a preliminary injunction is an "extraordinary remedy," the movant bears the burden of establishing the propriety of such relief. *Roudachevski,* 648 F.3d at 705. This burden is even heavier when granting a preliminary injunction request would in effect give the movant the relief he would obtain after a successful trial on the merits. *See Rathmann Group v. Tanenbaum,* 889 F.2d 787, 790 (8th Cir. 1989). Such is true in the instant matter.

**Employing Adam Koster**

A preliminary injunction cannot issue without a showing of irreparable harm. *Dataphase*, 640 F.2d at 114 n.9. To show a threat of irreparable harm, the movant must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief. *Roudachevski*, 648 F.3d at

706. Stated differently, the harm "must be actual and not theoretical." *Brady v. Nat'l Football League*, 640 F.3d 785, 794 (8th Cir. 2011).

Plaintiff has not presented any evidence establishing a threat of imminent harm resulting from Defendant's employment of Adam Koster. Plaintiff boldly states that since Defendant has employed Koster, its sales have decreased $60,000 and that it can be *inferred* that the reason for the decrease is Koster's employment with Defendant. There is no *evidence* that the decrease is attributable to the fact that Koster is no longer working for Plaintiff and that it is because he is working for Defendant. It is the movant's burden to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original); *see Minn. Bearing Co. v. White Motor Corp.*, 470 F.2d 1323, 1326 (8th Cir. 1973). Plaintiff cannot carry that burden by suggesting conjectural inferences that do not actually establish a likelihood of any injury, much less irreparable injury.

**Solicitation of Plaintiff's Customers**

Plaintiff argues it is entitled to injunctive relief against Defendant from directly or indirectly interfering with Plaintiff's customers. In support of its Motion, Plaintiff has submitted declarations that certain of its customers have ceased purchasing products from Plaintiff. Plaintiff also submited emails and text messages from/to Adam Koster wherein customers are discussed. Additionally,

Plaintiff has submitted the email exchange between "Jerry Melli" and Adam Koster.

The fundamental flaw with all of Plaintiff's submissions is that none of them establish that all of the claimed loss of business was the result of Defendant's interference with Plaintiff's customers. Plaintiff again attempts to support its request for injunctive relief through inferences without any evidence that the reason the customers ceased doing business with Plaintiff was because of Defendant's actions in persuading Plaintiff's customers from purchasing products from Plaintiff. Simply stated, there is no evidence presented to establish that Defendant was the reason Plaintiff lost customers. Nothing in the record negates the possibility that the customers themselves decided to purchase products through another source. Without the causal connection establishing Defendant is responsible for the loss of business, Plaintiff cannot establish irreparable harm and therefore cannot meet the burden of proof necessary for the Court to order the extraordinary relief of a preliminary injunction.

## **Conclusion**

Plaintiff seeks the ultimate relief sought in its Petition, *to wit*, injunctive relief. Plaintiff relies on inferences and conclusory arguments without presenting sufficient evidence of a causal connection between Defendant and Plaintiff's

claimed injuries. This is insufficient for the Court to issue equitable and extraordinary relief.

Accordingly,

**IT IS HEREBY ORDERED** that Motion for a Preliminary Injunction, [Doc. No. 18] is **denied**.

Dated this 30th day of August, 2019.

_____
   HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE