UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DIRECT BIOLOGICS, LLC, | ) |
| | ) |
| Plaintiff, | ) Case No.: 4:18CV2039 HEA |
| | ) |
| v. | ) |
| | ) |
| KIMERA LABS, INC., | ) |
| | ) |
| Defendant. | ) |

# **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion to Dismiss Defendant's Second Counter-Claim, [Doc. No. 61]. The motion is fully briefed. For the reasons set forth below, the Motion is denied.

## **Facts and Background[1]**

Plaintiff moves to dismiss Defendant's Second Counterclaim for interference with contractual relations. Curiously, Plaintiff argues that the counterclaim must be dismissed for failure to allege the necessary elements of the claim, citing *Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir. 2007), while arguing in its Response to the Motion to Dismiss Count III that the formulaic recitation of

---

[1] The recitation of facts is taken from Plaintiffs' Complaint and is set forth for the purposes of this Opinion only. It in no way relieves the parties of the necessary proof of the facts herein.

the elements of a claim are not necessary under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

With respect to the Second Counterclaim, Defendant alleges the following:

Anna Stahl ("Stahl") is the founder and Chief Executive Office of XL Medica ("XL"), a medical supply distributor, with a focus on selling regenerative medicine related biologics, based in Ft, Myers, Florida. XL is a distributor of Kimera products. On March 28, 2018, Stahl obtained a telephone number attributed to Greg Murphy ("Murphy"). At the time that Stahl obtained Murphy's telephone number, Murphy had been selling for New Life Regenerative Medicine, a company in the business of, among other things, distributing and selling biologics in the regenerative medicine space.

On May 16, 2019, Stahl received a text from the number attributed to Murphy. The text contended, regarding exosomes injections, a regenerative medicine related product/service offered by Kimera, that the marketing, legality, and health risks are unknown. The text further represents that Kimera's license had been suspended by the State of Florida. Finally, the text contends that Kimera's "property of record was raided and their corporate officers were criminally arrested for conducting drug raves at their facility last year."

Each and every allegation set forth in the text message was false and misleading. Defendant believes Murphy sent Stahl the text message in the course

of his employment either by DB or a distributor of DB products with the intention of persuading Stahl and XL to become a distributor of DB products rather that Kimera products.

Michael Carroll ("Carroll") is the principal of Regenerative Solutions, ("RS"), a medical supply distributor which focuses on selling regenerative medicine related biologics, based in Kansas City, Missouri. Carroll and RS are distributors of Kimera products. Between May 1, 2019 and June 30, 2019, Pat Klinger ("Klinger") an employee of DB, spoke with Carroll by telephone. Klinger requested that Carroll and RS distribute exosomes provided by DB rather than Kimera exosomes. To persuade Carroll, Klinger made the following statements: (1) Duncan Ross, the president of Kimera, was operating Kimera's laboratory out of the back of a nightclub; (2) Kimera has had no shipping or safety validation; (3) DB completed an independent third party lab test of Kimera exosomes, which indicated that the product did not consistently maintain appropriate dosage concentrations so as to be medically viable; (4) DB attempted to convince Kimera's principals, Duncan Ross and Douglas Spiel, to become compliant with appropriate safety regulations, but Kimera refused to do so; (5) Kimera has no tissue bank accreditation or AATB (American Association of Tissue Banks) certification; (6) DB received a large order from Kimera in a poor shipping container and the packages of product crumbled; (7) DB was forced to give away over $350,000 of

product it purchased from Kimera due to the poor quality of the Kimera product; and (8) after FDA's most recent inspection of Kimera's lab, FDA left with more questions than answers.

Each of the allegations made by Klinger was false and misleading. On information and belief, Klinger made the eight statements to Carroll described above in the course of his employment with DB with the intention of persuading Carroll and RS to become a distributor of DB products rather than Kimera Products.

During the Christmas season of 2018 , Dr. Crispino Santos, a physician in Las Vegas, Nevada who regularly used Kimera regenerative products, particularly exosomes, in his medical practice, sought an immediate order of exosomes to accommodate a particular patient in need. Dr. Santos contacted Carl Thompson, his rep and a distributor of Kimera products, regarding such an order.

Because of the holiday, Kimera could not provide the products which Dr. Santos needed in a timely fashion. To attempt to nevertheless accommodate the patient, Dr. Santos communicated with Andrew McNaughton ("McNaughton"), who Dr. Santos knows to be either a distributor of DB products or a sales employee of DB. McNaughton advised Dr. Santos that Kimera would be unable to provide exosomes in the future because its lab was unable to maintain appropriate quality control.

The statement made by McNaughton described in the above paragraph is false and misleading. McNaughton made the statement in the course of his employment by DB or as a distributor of DB with the intention of persuading Dr. Santos to become a customer of DB products rather than Kimera products.

On information and belief, employees or agents of DB have also made false and misleading statements about Kimera's key personnel and its products to unidentified distributors or customers of Kimera to persuade such distributors or customers to become distributors or customers of DB product. On information and belief, the DB agents or distributors making such false or misleading statements did so in the course of employment for, or as agents of, DB or as a distributor of DB.

Kimera had an established business relationship with Stahl and XL pursuant to which Stahl and XL were distributors of Kimera products and Kimera had legal rights arising out of the relationship. Kimera had an established business relationship with Carroll and RS, pursuant to which Carrol and RS were distributors of Kimera products, and Kimera had legal rights arising out of the relationship .Kimera had an established business relationship with Dr. Santos, who regularly used Kimera products in the treatment of his patients and Kimera had legal rights arising out of the relationship.

DB intentionally and unjustifiably interfered with Kimera's relationship with Stahl and XL through the actions of Murphy. DB intentionally and unjustifiably interfered with Kimera's relationship with Carroll and RS through the actions of Klinger. DB intentionally and unjustifiably interfered with Kimera's relationship with Dr. Santos through the actions of McNaughton.

Kimera has been damaged by DB's acts.

Plaintiff moves to dismiss the Second Counterclaim for failure to state a cause of action under Rules 12(b)(6).

**Legal standard**

In examining a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court accepts all of Plaintiff's factual allegations as true and construes those allegations in Plaintiff's favor. *Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017). To survive such a motion, Plaintiff's complaint "must include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp*, 561 F.3d 778, 783 (8th Cir. 2009). Put simply, Plaintiff's claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court revisited the standards for determining whether factual allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact), see, *e.g., Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic,* 550 U.S. at 555–56 (footnote omitted); *see Ashcroft v. Iqbal,* 556 U.S. 662, (2009) (instructing that "short and plain statement" requirement "demands more than an unadorned, the-defendant-unlawfully-harmed me

accusation."). Thus, the Eighth Circuit Court of Appeals has recognized that, under *Bell Atlantic,* "To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level....'" *Parkhurst v. Tabor,* 569 F.3d 861, 865 (8th Cir.2009) (quoting *Bell Atlantic,* 550 U.S. at 555). To put it another way, "the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.' " *B & B Hardware, Inc. v. Hargis Indus., Inc.,* 569 F.3d 383, 387 (8th Cir.2009) (quoting *Bell Atlantic,* 550 U.S. at 570); *accord Iqbal,* 556 U.S. at 678("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' ") (quoting *Bell Atlantic,* 550 U.S. at 557).

The court must still "accept as true the plaintiff's well pleaded allegations." *Parkhurst,* 569 F.3d at 865 (citing *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)); *B & B Hardware, Inc.,* 569 F.3d at 387 ("[W]e 'assume[ ] as true all factual allegations of the complaint' " (quoting *Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir.2007))). The court must also still "construe the complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.,* 514 F.3d 801, 806 (8th Cir.2008) (post-*Bell Atlantic* decision). On the other hand, "[w]here the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is [still] appropriate."

*Benton v. Merrill Lynch & Co., Inc.,* 524 F.3d 866, 870 (8th Cir.2008) (citing *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 (8th Cir.1997), for this standard in a discussion of Rule 12(b)(6) standards in light of *Bell Atlantic* ).

## Discussion

Plaintiff argues that because Defendant did not allege a "written contract." Under Missouri law, to bring a claim for tortious interference, a plaintiff must allege (1) a contract exists of a "valid business relationship or expectancy;" (2) the defendant has knowledge of the contract or relationship; (3) the defendant interferes with the contract or relationship; (4) Defendant lacked justification; and (5) damage to the plaintiff resulted. *NTD I, LLC v. Alliant Asset Mgmt. Co., LLC*, No. 4:16CV1246 ERW, 2017 WL 605324, at *9 (E.D. Mo. Feb. 15, 2017); *Brown v. First Health Grp. Corp.*, No. 4:07CV01852NLJ, 2009 WL 440489, at *7 (E.D. Mo. Feb. 20, 2009), on reconsideration in part, No. 4:07CV1852SNLJ, 2009 WL 1940373 (E.D. Mo. July 7, 2009); *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 316 (Mo. banc 1993); *Schott v. Beussink*, 950 S.W.2d 621, 628 (Mo. Ct. App. 1997).

Although Plaintiff argues Defendant has failed to allege a "written contract," Plaintiff presents no authority which requires a contract to be a written contract. A contract or business relationship is sufficient. Assuming the truth of the allegations and construing them in the light most favorable to Defendant, the Second

Counterclaim sufficiently alleges that Defendant had business relationships, and possibly contracts oral and/or written, with several individuals and entities.

Plaintiff also argues that Defendant has failed to specifically state any change in the relationship between these customers and Defendant. Again, specificity is not required, rather, Defendant has alleged that Plaintiff contacted Defendant's and provided false information about Defendant's products. Defendant further alleges that it suffered damage by reason of Plaintiff's false accusations. From these allegations, it can be inferred that Plaintiff knew of the relationships between Defendant and its customers, that Plaintiff interfered with those relationships without justification and that Defendant has been damaged by Plaintiff's actions. The allegations in the Second Counterclaim sufficiently notify Plaintiff of the claim against it; the allegations raise a plausible claim for relief.

## Conclusion

Under the applicable legal standards, assuming the truth of the allegations in the Second Counterclaim, and drawing all reasonable inferences in favor of Defendant, Defendant's Second Counterclaim withstands the Rule 12(b)(6) challenge.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss, [Doc. No. 61] is denied.

Dated this 15th day of January, 2020.

                                                _____  
                                                HENRY EDWARD AUTREY  
                                                UNITED STATES DISTRICT JUDGE